Good morning, Your Honors. The District Court erred in construing the claim term signal point by improperly limiting the generic term signal point to one particular type of signal point, a two-dimensional signal point. That was legal error under this Court's precedent because the claim language in broad claims is undisputably broad, says signal point. It's undisputed that there is no disavowal of the prior art that would limit the claim. It's undisputed. What does a 2 and 2n mean? The 2 and 2n, the 2 refers to the dimensionality of the signal point. So is that two dimensions? Correct. So a 2n would say the signal point is two-dimensional, and n is the number of signal points. So when you say 2n, it would say I have a two-dimensional signal point, n is how many of those I have. So if I have two of them, I would have... Does that answer the question here? No, it does not, Your Honor, because the question is, what the defendants are focused on, does the patent specification somehow limit the claim? And when we look at this Court's precedent, we see that you have to have an express definition, you have to have a disavow, you have to have some words of manifest exclusion. It's not enough that there's an embodiment that describes a two-dimensional signal point to limit the claim. If we actually look at the patent specification and look at the broad context of the invention, let's see what it says. The patent in column 6, lines 46 through 47. Referring to figure 5, one can see the improvement, the improvement that is achieved by the present invention. And what is that improvement in figure 5? Figure 5 is the figure with the gammas, the alphas, all the Greek letters, and it shows interleaving. Sure, it gives you an example of a two-dimensional signal point when it describes that, but it's showing you the improvement, and the improvement is interleaving. It wasn't about developing a two-dimensional signal point. They were known, one-dimensional signal points, two-dimensional, multi-dimensional signal points. They were all known. That wasn't what the invention was. It was about interleaving. Let's look at the patent, column 7, lines 7 through 9. Again, talking about the invention. It's to this end that signal point interleaver 341, and that's in figure 3, is included with the transmitter in accordance with the invention. So what were they doing in accordance with the invention? Putting an interleaver in the system so you could have signal point interleaving. That's what the invention was about. Is it true that the 625 patent only dealt with two-dimensional signal points or constellations? I don't know if it only did, but the focus was in the prior 625 patent that Mr. Betz, the fellow from AT&T Labs who invented this, with his patent as well, focused on two-dimensional signal points. I don't know if it's exclusionary, but it focused on two-dimensional signal points. That is correct. But that doesn't mean the patent, the 627, the issue here is limited. We have to look at the four corners of the patent specification. I've just pointed you to two points in the patent where they're talking about the invention. When you look at the case law that this court has, and it focuses on where it talks about the invention for where it's manifest exclusion. We're talking about, here, interleaving. We're not talking about a two-dimensional signal point. And if we go on, and we go into the patent specification, and we look at the details of the patent specification, it takes this complicated signal processing technology and gives you figure 1. Figure 1 is a prior art system. In figure 1, there's no interleaving. But they have to give you context to explain the invention. What context do they give you? They say, here's our example. We're going to give you a two-dimensional signal point in the example. Then they say, let's get to figure 3. And I'm going to show you how you put a signal point interleaver in the system. I'm going to show you how you put distributed trellis encoding in the system to get the interleaving. And they put that in figure 3. And did they put words of exclusion, the manifest exclusion words that this court requires? No. Look how they bookend the context of figure 3. They begin by saying, turning now to figure 3, the transmitter portion of a modem, embodying the principles of the invention is shown. What are those principles? Interleaving. The embodiment illustratively uses the aforementioned four-dimensional N equals 2 signal. Illustratively uses. But it's still interleaving in the two-dimensional context, is it not? I mean, every time the specification discusses what the invention is, it refers to using two-dimensional channel symbols. The example, you're correct, Your Honor. It repeatedly refers to two-dimensional. Well, let's look at the abstract. But when you get... Discovery of the invention. Every single example. The example. And that's not enough to limit. You need words of manifest exclusion. If we look at the end of figure 3, when they begun discussing this complicated technology of figure 3 and figure 5, they began by telling you it was an example that illustrated the principle. They end by saying the foregoing merely illustrates the principles of the invention. Interleaving. Thus, although the illustrative embodiment utilizes a four-dimensional signaling scheme, a two-dimensional signal point with two of them, that's four dimensions, the invention can be used with signaling schemes of any dimensionality. Where in the specification does it refer to other than a two-dimensional signal? What it says right there. Column 8, lines 57 through 61. It says the invention can be used with signaling schemes of any dimensionality. Any are not words of exclusion. They're words of inclusion. Where was that again? Column 8, Your Honor, lines 57 through 61. And if you look at what the defendants had to say about this, they struggle with this concept. And they try to tuck it away in a footnote. On page 36 of their brief footnote 11, they say any means multiples of two. Well, any doesn't mean multiples of two. That's not what it means. Any is the words of inclusion. If we look at this court's case law on this specific point, you have the cases like Calmedica, I4I, Gillette, where this court said, looked at its embodiment and said, were the words of exclusion. Does the invention work the same? And they found no words of exclusion. Now, you have your other case law that this court has, defendants have cited, Edwards Life Sciences, and those cases. In those cases, there were words of exclusion. There were words that said the invention is. This court said in those cases that the repeated mentions, the repeated or frequent mentions of the invention is. The invention is. They never say here the invention is a two-dimensional signal point. The invention is interleaving. Sure, they give you the example, but then they open it up with the any dimensionality. Let me refer you back to your column 8, where at line 57, I guess, is where we begin. That's where the paragraph begins, but it says in the general two-dimensional case. Now, you say, you argue that that means that that's because you're just referring to two-dimensional being the general circumstance, but the way that that is offset with the commas implies that you're only talking about two-dimensional circumstances, the general two-dimensional circumstance, and then the alternative two-dimensional circumstance. Well, I disagree with that reading, Your Honor, because if you look at the context, what happened here is they gave you the example in figure 3. Right before that, they have a sentence that said that merely illustrated the principle of the invention. Then they say it can be used with signaling schemes of any dimensionality. Their experts admit that everyone knows there's one-dimensional signal points. Was that at any point disclaimed? Did you disclaim anything beyond two-dimensional embodiments? Did we disclaim anything? Absolutely not. There are no words of disclaimer. This isn't a case where you have prior art that was closed and you had to argue around it and you need the two-dimensional to be in the claim in order to get the case filed. That's not in the case. There's no words in the background of the invention here that exclude it. They've never asserted that there's a disavowal. But if you look at the broad claims, the claims say what? Signal point. They don't say two-dimensional signal point. Can you disclaim something by repeatedly referring just to one embodiment? By repeatedly referring? I don't think so. If you have words that have exclusion along with those repeated aversion, then yes, you could disclaim it. If you look at your case law with Edwards Life Sciences, those types of cases, that's effectively what happened there because in those cases, there are words that said according to the invention. But if you look at the other cases like Gillette, like Halimedica, there was a single embodiment and this person repeatedly said, well, that's not enough. You need more than that in order to have a disclaimer, in order to limit a broad claim. And if you look at what's happening here, figure three is a system and there's one type of modulation in there, the QAM modulator. That's block 324. What's really going on here is the accused product uses a different type of modulation. It's one dimension. They just want to limit us to that encoder. You're arguing that they've imported limitations from the specification into the claim. How do we distinguish between importing limitations and being enlightened by the specification as to the meaning of the claim? I think it's very clear when you look at the specification and the cases where you have those examples, if you look and read those cases carefully. It's really the disclaimer doctrine primarily, right? That's correct. Or some type of exclusion. It has to be a clear and unmistakable disclaimer of scope. That's exactly right. Or an express definition that says, or they could have put words in here that said, don't use signal points in one dimension. We know that everybody knows there's one-dimensional signal points or three-dimensional signal points. Everybody knows that. They could have put words and said don't use them. Instead they said use any dimensionality. It could be more clear. You could have a four-dimensional channel symbol with four one-dimensional signal points. It's not germane to this invention. It's not what this invention is about. When you say it's not what the invention is about, my problem with that is that you look at the summary of the invention and it specifically says using two-dimensional channel symbols. Now, granted, the summary of the invention is only one data point, but the abstract is another data point, as is the fact that not just the preferred embodiment, but every embodiment here are other data points. At some point, how many data points do you have to have in the spec to tell us what you meant? It's a good question, Your Honor. They are all data points. But you cannot line out the any dimensionality. You can't line that out or remove that from the patent. You cannot do that. We can't do that. We have to take the whole patent, MySpace versus Graphon. We have to look at the four corners of the patent, the whole thing. And sure, he says in the summary of the invention, it is realized in accordance with the invention. He is telling you that's why he realized it. I was working on a two-dimensional system. That's when he realized it. That's what he is telling you. And then when he goes through and gives you the example, he broadens it out. When he gets done with Figure 3, Figure 5 takes this complicated technology, he broadens it out. And to get back to your question, which I don't think I fully answered about the general 2N case, if you look at the context there, it says any dimensionality. He just got done explaining Figure 3. It's very detailed Figure 5 processing. He says merely illustrates the principles of the invention. You can use any dimensionality. Neil, let me get back to what I was talking about, the 2N case. Then it goes on and says in the general 2N dimensional case, so doesn't the word or the term general case in engineering have a specific meaning, especially when it goes on and refers to the two-dimensional subsets? You're talking specifically. In other words, you're saying for this invention, we're dealing with two-dimensional subsets and we're dealing with two-dimensional single points. No, that's not how I read this, because the actual language, Your Honor, it's a sentence before it says the invention. Invention. The invention can be used with signaling schemes of any dimensionality. Then he says, I'm going to get back and explain to you this 2N case in the general 2N dimensional case. That's one type of case. If it was the only case, he would have said the only case. You could take out. Do you want to say there must be a rebuttal time here? Yes, Your Honor. Okay. Let's hear first from Mr. Benioff-Carr. Yes, thank you, Your Honor. Mr. Benioff-Carr, this invention is about scrambling to get less loss over system noise. That's going to work with one dimension as well as two, right? There is no evidence in the record. Would it work as well with one dimension as with two? The answer is very clear. You're scrambling whether it's one dimension or two, right? This is an invention about scrambling things up so that if you lose something, you haven't lost a section that you can't reconstruct but you've lost one word here and one word here and one word here and one word there which you can easily reconstruct. Now that works with one dimension as well as two, right? Scrambling would occur... It's a yes or a no. So that is not the invention, Your Honor. The reason I can't answer yes or no is because that is not the invention. Would this invention work with one as well as two inventions however you describe it? I'm not an engineer, but this is not just a scrambling invention. Would this invention, however you describe it, work with one dimension as well as two or with three or with four or whatever number of dimensions? Isn't dimension just irrelevant to how the invention works? Absolutely not. Well, then show me that because this starts out by saying the present invention relates to the transmission of digital data over band-limited channels. Very broad statements. And it talks about any dimensions are possible. And so tell me why it only works with two dimensions. The reason that we don't know if it works with any other dimension is the prior art 625 patent also related to interleaving. The invention here is not interleaving. It is interleaving the constituent signal points of a 2N dimensional channel symbol. That's what these inventors brought to the table. They said interleaving is known. You can look at our own prior 625 patent and see that. What we invented are these known constructs called 2N dimensional channel symbols. Lee Fang Wei invented them. But they didn't say that in the claim, did they? They didn't say in a 2N dimensional signal point. They said in a signal point. And they did not disclaim any other dimensions. So how can we assume that it only works in one? You just told me you're not able to testify to that. Well, so, Your Honor, let me address this notion of disclaimer. There is no evidence in the record that signal point had a plain and ordinary meaning in 1991. It was not Rembrandt's position below that signal point had a plain and ordinary meaning in 1991. No expert testified to it. They refer to our expert, Dr. Gitlin. Dr. Gitlin never said it had a plain and ordinary meaning. He was never asked if it had a plain and ordinary meaning because Rembrandt's position below was not that it had a plain and ordinary meaning. All parties in the district court agreed that signal point had to be construed as it is used in the specification. And that is exactly what the district court did. Not only did they not ask Dr. Gitlin if it had a plain and ordinary meaning, they didn't ask their own expert if it had a plain and ordinary meaning. We're not talking about a plain and ordinary meaning. We're asking if this invention will work with more than a 2-dimensional embodiment. But what I'm saying is... If it does, they have not disclaimed any other uses. They have used a broad term which can encompass more than 2N-dimensional. They didn't write that into the claim. Your Honor, if signal point does not have a plain and ordinary meaning, then this is not a disclaimer case. This is not a case where we're coming to you and saying, well, we have a term... The question is whether it has a meaning broader than 2N-dimensional. There is no evidence in this record that signal point has any plain meaning, much less any meaning other than the 2-dimensional way that is used consistently in every instance in this specification. And the reason why I can't answer the question of, well, will it work if it's not 2-dimensional, is because the whole invention is, take the Lee-Fang Way 2-dimensional channel symbol and interleave the constituent signal points of that symbol. That is the entire invention here. And you do it differently, right? You do it with a 1-dimensional. So the answer is, yes, it works. Why don't you answer the question? Because we do not use multi-dimensional channel symbols at all. Now, we did not get summary judgment on that point below because the district court found that there were issues of fact. But we don't use 2-dimensional signal points. We don't use signal points because we don't use the way symbol at all. One expansion of our trellis encoders are used to select only one signal point. So the whole context of this invention, everything else... Well, if you have another argument, maybe you need to go back and make it, right? Instead of relying on something which imports a limitation from the specification. So, again, Your Honor, our position is there is no concept here of importing a limitation from the specification into the claim because signal point does not have any meaning outside of its use in the specification. There's not a single scintilla of evidence in this record that signal point had any plain and ordinary meaning in 1991. And Rembrandt never took the position below that it did. There's not a single dictionary definition, learned treatise, or any other evidence. Signal point can only be construed consistent with its use in this specification. And as Judge O'Malley said, the only use of signal point in this specification is a point on a 2-dimensional constellation. And all parties invited the district court to examine the specification to determine what was taught, correct? Correct, Your Honor. All parties asked the district court to construe signal point consistent with its use in the specification. Nobody argued a plain meaning. And I just want to quickly raise one point about this any-dimensionality issue. What that is saying is for... Can you save me time for Mr. Rinas? I'm sorry. I'll save you time. This is very... Okay. Mr. Rinas. Let Mr. Rinas address this. Thank you, Your Honor. You know, the American system doesn't allow the fixing or changing of documents 20 years after the fact. It's a 1993 patent. When it was drafted, it was clearly drafted that anyone that was reading the patent and wanted to be put on notice of what the improvement was. This was an incremental improvement to a 2N system. And it says it in the first sentence of the summary of the invention. It says in accordance with the present invention, which is just like what was used in Edwards and legion other cases from this court. And it says it has been realized that the Viterbi decoder performance in a data communication system using 2N dimensional channels can be further enhanced, Your Honor. It's very specific. It says by an interleaving technique which uses in combination that it sets forth the invention. The environment of the invention to any reader of skill in the art and there's only one that submitted evidence and he was clear about this and that's in the record, the expert in this case. The environment of the improvement was incremental to a two-dimensional signal point. A signal point does not have a free-floating meaning. If signal point had a specific meaning, you wouldn't have the other side changing their position from the district court, a total reformulation in language to the appellate court if it had this well-known broad generic meaning, which is what the argument is. They don't have any such position. Why don't you address the any dimensionality language that you're talking about? Sure. In column 8, what it says, any dimensionality cannot literally be true the way it's being construed by opposing counsel. The reason is that it's a multi-signal symbol. Each symbol must have multiple signals. Everyone agrees that means there's a minimum of two dimensions. The question is whether it can be more for the symbol. So any dimensionality can't be... Meaning a multiple of two. Well, yeah, because of the two-end signal point. But both sides agree that this dimensionality of the overall signaling scheme has to be a minimum of two because the symbol has to have multiple signal points. That's just the claim language says. Each symbol is comprised of multiple signal points. Because there's multiple signal points, there's multiple dimensions. So any dimensionality is not accurate. It's not one dimension. It's not zero dimensions. It's not a fractional dimension. We know that's not right. When they say any dimensionality, what they mean is that there's flexibility. You're not limited to just two. It could be four or six or eight, which are the examples that are given otherwise in the patent. And then, as Judge Raina pointed out, and Judge O'Malley also noted, it says in the general two-end dimensional case, and then it gives the specific general case there. If there's any genus that's being identified, it's the two-end dimensional case. So I just... To an ordinary reader, you would never view this as anything other than an incremental improvement to a two-dimensional case. Beyond that, what I want to point out, one other thing, is that everyone agrees that a signal point is a point on a constellation. I think the only debate then is two, is it one, can it be three, one. That's all I heard the court reference. Under their theory, the signal point, that they're identifying the signal point, has no constellation whatsoever. So they haven't shown any error in the district court's construction that requires a constellation. And they haven't put any evidence or shown why it matters that you change the construction from two dimensions to permit one dimension. And I think to come and complain about a claim construction, they need to demonstrate that things would be different if they could prove that it was one dimension. And they can't show that because they can't show signal points on a constellation. You'll see no evidence in this record that there's a signal point on a constellation. And the reason is because their position is that the bits coming out of the trellis encoder, that's pretty far upstream, that those bits are the signal points because they have to argue that for the adjacency problem that they have. But they can see that the decoding of the VSB is upstream from that. So they're not yet signal points. They're not mapped to a constellation at that point. So they lose anyway. And to come before the court after the district court's done all this work and say we don't like the claim construction, argue about one aspect of it, but not show they can meet the other aspect of it, and on top of that totally reformulate the construction without any explanation in front of this court, is not the kind of situation where we're going to reverse what was done below, it seems to me. And on top of that, that doesn't even go to the other alternative grounds that we have in the record. But to the question of whether Chief Judge Randall's fair question, which is would this work with a one-dimensional system, I have to agree with Mr. Ben-Yakar that no one knows because no one's tried to do it. In 1991, could they have done that? There's no evidence in the record they knew of a one-dimensional system. If they were to disagree with you, do we have to accept a clause in claim construction? I certainly don't think you would. I think it would be procedurally unfair to accept theirs on appeal. And the one that they have at the district court never takes on the requirement that there be a point on a constellation. Their position below was that it was transmitted by a modulator, which is the last point in this path. That's when it comes from a digital and it becomes a wave at the very last point, which is after everything's been mapped to a constellation. To have this problem with adjacency, which is that the signal points have to be adjacent before you scramble them, otherwise the whole point of the invention doesn't make sense. So they have to go upstream to the adjacency to the trellis encoder. As soon as they go upstream to the trellis encoder, they don't have signal points anymore under their construction below, which is why they changed their construction on appeal. So we're arguing about nothing with this one dimension, two dimension, which we're absolutely right about. Mr. Ben-Yakar couldn't have been more exact on that point. But in addition, it doesn't matter, because the bits that are coming out of the trellis encoder are not signal points themselves. Thank you, Mr. Reines. Vanilla? Are you removing modulation from your construction below? No, Your Honor. We don't believe that's a change. The new constructions that we offered, we don't think it's a substantive difference. We're not offering a new one. Why do you bother? We thought it would be clear language for the jury, but it doesn't matter to us one way or the other. You can take our construction below, our constriction here. The issue isn't really our construction. They haven't raised any substantive issue, really, with our construction. The issue is whether it's two-dimensional or not. That's always been the issue. It's the only issue that's ever been litigated below. But you can't change our construction on appeal, can you? But under the Harris case, under the Lava Trading case, a slight change in claim construction where it doesn't change the issue, the central issue, was determined not to be a waiver. But it seems to me it's changing the central issue here. We're losing modulation. We're losing a lot of the focus of what was done below, as you argue to us, a new claim construction. No, I don't think we're losing the focus at all, Your Honor. The focus has always been on whether the two-dimension is in or out. That's the only issue that's ever been litigated. Look at the claim construction beliefs below. Are you removing the requirement of transmission? No. We think that when you are constructing a coded value that represents a signal at an interval, and that signal interval is the transmitted modulated signal. That's what we're talking about. We don't think this is a big difference. So, in other words, you're not really giving an argument for your claim construction. You're just arguing against what the court did. No. How could we disrupt what the court's done when where we're headed has no definition at all? That's not true. There's a definition right off the top. Does it have modulation or transmission? Yes or no? I'm sorry. Could you repeat that? Does your claim construction account for modulation and transmission? Yes. It absolutely does because it represents the signal. What signal are we talking about? The modulated transmitted signal. The signaling interval of that signal. Absolutely. Yes. We're not trying to change the construction. And I will answer your question about whether a one-dimensional signal point will work. Well, obviously, it will work with this invention. You put a one-dimensional modulation scheme and you just interleave the signal point. It doesn't matter. And that's what the accused products do in this case. Now, they subscribe to a lot of agreements. I heard all kinds of things that were said with no citations to the record whatsoever as what we supposedly agreed to, what we did. There was no substance to citations to the record there. And those were all incorrect. I don't have time to rebut them. But I do want to point out that the defendants have not been consistent about what this invention is about. When we go to the Markman briefing, here's what the defendants had to say at Markman about what the invention was. The invention is interleaving signal points that are part of the same symbol, JA1001, lines 8 through 19. At the Markman hearing, the patent says, how are you going to improve that? We're going to add this interleaving technique. JA966, lines 7 through 8. The defendants' plain construction briefing below, the 627 is a combination of the 625 patent with a purportedly new signal point interleaving technique, JA380 to 381. Final thought is if this patent was so exclusionary, defendant Comcast would not have gone through an entire Markman proceeding and not raised this issue. What they said was Comcast construction is not intended to and does not limit signal points to points in a two-dimensional signal constellation, JA2525. Thank you, Mr. Vanella. That concludes our morning. Thank you, Your Honor. All rise.